## CHARLES v. ESHLEMAN ET AL., EXECUTORS.

1. Under the statute (Gen. Laws section 2,918), claims against an estate may be tried in the county courts before a jury, and without formal pleading, as in ordinary trials before a justice of the peace.

2. The fact that a county judge is permitted to exercise an equitable jurisdiction in the allowance of claims does not deprive litigants of the right of submitting facts to juries, at least in actions not purely equitable.

3. If there be partnership property, and also separate property of a deceased partner, the partnership debts are to be paid out of the proceeds of the joint estate, and the individual debts out of the proceeds of the separate estate. In the exercise of equitable jurisdiction in the allowance of claims, county courts are strictly restrained from infringing on this rule.

4. The reason assigned for the distinction between the ordinary commercial partnership and a mining partnership, and for limiting the powers of the partners of the latter class, is that a mining partnership is not founded on the *delectus personæ*, whereas the other class is.

5. The powers of members and managers of mining partnerships are limited to the performance of such acts, in the name of the partnership, as may be necessary to the transaction of the business, or which is usual in like concerns.

6. The employment of counsel to litigate the title to the mine does not come within the limited powers vested in a mining partner. But this rule does not apply to incorporated mining associations, nor to partnerships formed under the statutes.

7. The rule is that whenever a party undertakes to do an act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally responsible to the person with whom he is dealing on account of his principal.

8. Ratification can only be effectual between the parties when the act is done by the agent avowedly for or on account of the principal, and not when it is done for or on account of the agent.

*Appeal from the County Court of Jefferson County.*

THE facts are sufficiently stated in the opinion.

Mr. J. Q. CHARLES, appellant *pro se.*

Mr. R. S. MORRISON, for appellee.

BECK, J. The appellant was employed in his professiona'

capacity as a lawyer by the deceased, John H. McMurdy, to manage and attend to certain suits involving the title of the Dives mine at Georgetown. McMurdy was one of the owners of the mine, and was, at the time of employing appellant, acting as its manager. After his decease, the professional services rendered not having been paid, appellant presented his account therefor to the County Court of Clear Creek County and caused it to be filed as a demand against the estate. Objections to its allowance were made by the executors, and the issue of fact as to the liability of the estate, was submitted to a jury, who returned a verdict for the appellees. A new trial and change of venue were granted, and the cause removed to the County Court of Jefferson County, where the issues were again submitted to a jury, against the appellant's objections, and a like result followed, the jury returning a verdict for the estate.

The first error assigned is that the court erred in permitting the cause to be tried by a jury. There was no error in this. The statute provides that " the manner of exhibiting claims against estates shall be by filing in the county court the account or instrument of writing, or an exemplification of the record, whereon such claim is founded. Formal pleading shall in no case be required; but the issues shall be formed, heard and determined in the same manner as in actions before justices of the peace." (General Laws, section 2,918.)

It will be perceived that the statute provides the mode of trial, as well as the formation of the issue. Section 1,506 provides, that " at any time before evidence is given in any suit before a justice of the peace, either party, upon advancing the jury fees, may demand to have the cause tried by a jury," etc. It was evidently the intention of the legislature to adopt the same practice in respect to trials of issues of fact, in the county court, when sitting for the purpose of the adjudication of claims against the estate of deceased persons, as in ordinary trials before justices of the peace, and the fact that the court is permitted to exercise an equitable jurisdiction in the allowance

of claims, does not deprive litigants of the right of submitting questions of fact to juries, at least in actions not purely equitable.

The other errors assigned relate to the conduct of the trial, the giving and refusing instructions, and in overruling appellant's motion for a new trial.

The appellant's claim, as presented, was for a sole employment by McMurdy ; the defense interposed was, that it was a general employment in the name and for the joint benefit of a partnership, and concerning the partnership property ; and as such the estate was not liable, but that the claim must be presented against the survivors only. The appellant controverts the proposition that it was a joint employment, but insists that if it was, the county court would have jurisdiction to allow the claim as an equitable demand against the estate of the deceased, on the principle that partnership debts are joint and several in equity.

The English rule is, that all partnership contracts are to be held joint and several in equity, and that upon the death of a partner a creditor of the firm may proceed at once in equity against the estate of the deceased, whether the firm or the surviving partners be solvent or otherwise ; but it requires that the surviving partners be made parties to the bill, because they are interested in taking the account. Parsons on Partnership, Sec. 448; 1 Story's Eq. Jur. 676.

This rule has been greatly modified by statute in this country. Our statute upon the subject of wills, executors and administrators is similar to the statute of Illinois on the same subject, its main provisions being a transcript of that statute We may, therefore, look into the decisions of the courts of that State for rules to guide us in the construction of this statute. The rule there adopted is, if there be partnership property and also separate property of a deceased partner, the partnership debts are to be paid out of the proceeds of the joint estate, and the individual debts are to be paid out of the proceeds of the separate estate. *Pahlman's Ex'rs, etc.* v. *Graves*, 26 Illinois, 405.

It will be observed, that while it is held that courts of probate may exercise an equitable jurisdiction in the allowance of claims against estates of deceased persons, such courts are strictly restrained from infringing on the foregoing rule.

In the case of *Moline Water-Power and Manufacturing Company* v. *Webster*, 26 Ill. 239, Chief Justice Caton says: "We wish to be distinctly understood, that no claim should be allowed against the estate for a partnership debt, till it is shown that all the partnership assets have been exhausted. Till this is done, no equitable claim ever arises against the estate." See also, *Pahlman's Ex'rs* v. *Graves*, supra, p. 408.

The appellant's position, therefore, that if the claim should be found to be a partnership debt, and not the individual debt of the testator, the probate court had jurisdiction to allow it in this proceeding as an absolute demand against the estate, cannot be sustained. In order to save the bar of the statute, however, in the event that the partnership assets in any case should prove insufficient to liquidate the partnership debts, it would be proper to have the claim exhibited, and filed in the county court against the estate, within the time and in the manner required by statute.

The whole testimony in the cause, however, falls far short of establishing that an ordinary partnership existed between McMurdy and the other persons named by the witnesses as interested in the Dives mine. It does appear that the mine was owned as tenants in common by the deceased and other persons. According to the testimony of Hamill, the owners were McMurdy, Wilcox, Marfield, Sowerly, Payne, Story, Perdeaux, Jackson and Logan, and he says some others claimed to be owners. The interests of the several parties appeared to have differed, both in nature and extent, some owning undivided interests jointly, while others owned adjoining claims upon the lode; thus McMurdy owned one-third of the mine, and Payne and Sowerly one-fourteenth, while Story owned 233 feet, and Logan 100 feet. This witness says McMurdy acted as manager, but thinks he had no authority

to act from Payne, Sowerly and Wetherell. No contract of partnership was proven. In such case it would not be within the scope of the authority vested in a mere manager of the working of the mine, although himself an owner, to employ an attorney in the name of all the proprietors, to prosecute and defend litigations concerning the title of the property. Without special authority for that purpose, such a contract, if made, would not bind his co-owners.

The evidence does not warrant an inference that an ordinary partnership relation existed between the several proprietors. At most, it shows what has been denominated a mining partnership; a relation that would not authorize one member to bind the partnership by a contract of this nature without the assent of the individual members. A mining partnership is held to exist where the several owners of a mine co-operate in the working of the mine, and it is held that this relation is governed by many of the rules relating to ordinary partnerships, but differs therefrom in many important particulars; as, for example, a member may assign his interest without the consent of his co-partners, and the act does not work a dissolution of the partnership; the person to whom the interest is assigned becomes a member of the company, and it is not necessary that the other members consent thereto. Neither does the death of a member dissolve the partnership. Another peculiarity is that a partner has not the power to bind his associates by engagements with third persons, to the extent that a member of a trading or commercial firm may do. The law does not imply any authority to a member of a mining partnership to execute a promissory note, or to draw or accept a bill of exchange.

The reason assigned for the distinction between the ordinary commercial partnership and a mining partnership, and for limiting the powers of partners of the latter class, is, that a mining partnership is not founded on the *delectus personæ* whereas the other class is. New members come into a mining association against the wishes of other members, and it is held

that to subject the owners, under such circumstances, to personal liabilities not authorized by them, but contracted, it may be, by those who became members against their wishes, would be unjust. For these reasons it is held the powers of members and managers of such companies are limited to the performance of such acts, in the name of the partnership, as may be necessary to the transaction of its business, or which is usual in like concerns. *Skillman* v. *Lackman*, 23 Cal. 200; *Duryea* v. *Burt*, 28 Cal. 569, and cases therein cited.

It is evident that the act of employing counsel to litigate the title of the mine, does not come within the limited powers vested in a mining partner. These observations have no reference to mining associations incorporated, nor to partnerships formed under the provisions of the statutes. No doubt a partnership may be formed for mining purposes, that would possess all the elements of a commercial partnership, and which would subject its members to the same rules and liabilities, but there is no testimony in the record that such a partnership relation existed in this case.

This being so, the instructions given on the part of appellees were not warranted by the testimony, and were calculated to mislead the jury. By these instructions the jury was advised in substance, that if the appellant was employed in behalf of the owners of the Dives mine, or to act as attorney for the Dives lode generally, that no recovery could be had. This was manifest error. It was the province and duty of the jury to inquire whether McMurdy was authorized by the owners to employ counsel in their names, as well as to find whether he had in fact assumed to do so; and the jury should have been so informed. The force of the instructions as given, is that if he assumed to employ the counsel for the owners, the latter, and not the estate of the deceased, is bound, thus wholly ignoring the essential element of a binding contract, the authority of the party to make it.

If McMurdy assumed, without authority, to contract for the company, he, and not the company, became bound, and in

Charles v. Eshleman et al.

such case the claim should have been allowed. The rule is that "whenever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally responsible to the person with whom he is dealing on account of his principal." Story on Agency, Sec. 264.

There was some testimony tending to show that the owners of the mine ratified the employment of appellant. Such testimony would only be material if the hiring was in the name of the owners, for a ratification can only be effectual between the parties when the act is done by the agent avowedly for or on account of the principal, and not when it is done for or on account of the agent. Story on Agency, Sec. 251.

We find but little in the testimony to warrant the conclusion that deceased assumed to contract for any one but himself. He appears to have been thus understood by appellant and his clerk, at time of the employment, and the retainer and fees were charged against him individually. If he contracted in his own name, appellant would not be bound by a ratification by the company, if proven.

In order to make out the defense in this case, the burden of proof was on the appellees to establish by testimony the joint character of the debt, and the authority of the deceased to contract it; or that it was contracted on behalf of the owners of the mine, and subsequently ratified by them. In this they have signally failed, and the verdict is not only against the weight of evidence, but is wholly unwarranted by it, and should have been set aside.

For these errors the judgment must be reversed and the cause remanded.

*Judgment reversed.*