## No. 12,538.

## BOTKIN *v.* PYLE.
(14 P. [2d] 187)

Decided July 5, 1932.   Rehearing denied September 12, 1932.

222

Mr. LOUIS HENKE, Mr. JOHN F. MAIL, for plaintiff in error.

Mr. LEONARD E. ANDERSON, Mr. WILLIAM B. PAYNTER, Mr. GEORGE A. EPPERSON, for defendant in error.

*In Department.*

MR. JUSTICE ALTER delivered the opinion of the court.

THE parties hereto will hereinafter be referred to as they appeared in the trial court where William Pyle was plaintiff and Lillie O. Botkin was defendant. John M. Botkin, who was a party defendant in the trial court, will hereinafter be referred to as Botkin. Botkin and Lillie O. Botkin were husband and wife and resided together as such on the ranch hereinafter referred to, upon which they farmed and from which, so far as revealed from the record herein, their only source of income was derived. Plaintiff recovered a judgment for a part of the relief to which he believed himself entitled, to review which judgment defendant prosecutes this writ, assigning errors to which reference will hereinafter be made, and plaintiff assigns cross-errors, as will hereinafter specifically appear.

The allegations of the complaint, in their chronological order, may be thus summarized: During the fall of 1917, Botkin entered into an agreement to purchase certain farm lands in Yuma county for the total sum of $32,000; one of the deeds was dated November 12, 1917, and Botkin and the defendant were therein named as grantees; the other deed was dated February 28, 1918, and Botkin and the defendant were therein named as grantees; both deeds were thereafter, on March 2, 1918, duly recorded in the office of the county clerk and recorder of Yuma county. At the time of the delivery of the deeds, $12,000 of the total purchase price was paid by checks, signed by Botkin, and the balance thereof was evidenced by a promissory note in the sum of $20,000, signed by Botkin and defendant, and secured by a deed of trust, signed by Botkin and defendant, upon all the lands described in the two deeds hereinbefore mentioned. Prior to April 2, 1923, the indebtedness secured by the deed of trust was reduced to the sum of $10,000, all of the payments being made by checks signed by Botkin; on March 1, 1923, the

balance of the indebtedness, secured by the deed of trust, was paid by borrowing $9,500 from the Federal Land Bank of Wichita, Kansas, augmented by other funds, and, in turn, this $9,500 was secured by a certain amortization mortgage upon the lands mentioned in the two deeds, which amortization mortgage was executed by Botkin and defendant. The principal and interest on the $20,000 note, and the payments made on the amortization mortgage, to and including September, 1926, and all the taxes upon the lands, due and payable prior to 1928, were paid by checks signed by Botkin. Prior to August, 1923, Botkin became indebted to plaintiff, which indebtedness was evidenced by Botkin's promissory note, upon which plaintiff secured judgment, on August 27, 1923, for approximately $5,000, and immediately filed a transcript of the judgment in the office of the county clerk and recorder of Yuma county. On September 12, 1923, Botkin executed and delivered to plaintiff his promissory note in an amount due on the judgment aforesaid, and secured the payment thereof, on September 12, 1924, by executing and delivering to plaintiff a deed of trust on all of the lands theretofore conveyed to Botkin and defendant, which deed of trust was immediately recorded in the office of the county clerk and recorder. Plaintiff thereupon satisfied his judgment and filed a release of the lien thereof.

The deed of trust which Botkin delivered to plaintiff was made expressly subject to the amortization mortgage to the Federal Land Bank of Wichita, Kansas, and among other covenants and agreements on Botkin's part, we find that, "* * * the said party of the first part, * * * at the time of the ensealing of and delivery of these presents he is well seized of the said lands and tenements in fee simple, * * *." The note, secured by the deed of trust just mentioned, became due on September 12, 1924, and remained unpaid until May 12, 1928, when Botkin executed and delivered to plaintiff his warranty deed, purporting to convey all the lands conveyed to himself

and defendant in the two deeds hereinbefore mentioned; and in this warranty deed, covenanted and agreed that he was the owner of said lands in fee simple, subject to the amortization mortgage only.

Upon the delivery of the warranty deed last mentioned, plaintiff cancelled and surrendered Botkin's promissory note and requested the release of the trust deed securing the same, and also delivered to Botkin a certain contract in which plaintiff agreed to reconvey to Botkin all of the lands mentioned in the warranty deed from Botkin to plaintiff, provided Botkin should, on or before March 1, 1929, pay to plaintiff an amount equal to the indebtedness on the promissory note, if the same had not been surrendered and cancelled. Botkin agreed that, upon his failure to pay the amount due plaintiff, as specified in his certain contract, before March 1, 1929, he would deliver possession of the land described in his warranty deed to plaintiff. The payment of the specified amount was not made on March 1, 1929, and plaintiff demanded and was refused possession by defendant, who, on March 1, 1929, filed a partition suit in which she claimed that she was the owner of an undivided one-half interest in the lands and tenements described in Botkin's warranty deed to plaintiff; but defendant, upon receipt of notice to take her deposition, dismissed her partition suit without prejudice. Plaintiff alleges that Botkin, during the entire period of their transactions, represented himself to be the owner, in fee simple, of all the lands and tenements herein involved, and that he was ignorant of the fact that defendant appeared as a joint owner with Botkin; and, upon information and belief, alleges that defendant, during all the time when Botkin was holding himself out to plaintiff as the owner of the lands, knew of his false representations, and of all the transactions between plaintiff and Botkin, and ratified, assented to and acquiesced therein; and that plaintiff, in waiving his rights to enforce the judgment which he obtained against Botkin, on August 27, 1923, and in satisfying and releas-

ing the same, upon Botkin's giving plaintiff a promissory note, secured by a deed of trust upon all of the property described in the two deeds to Botkin and defendant, in payment of the same, and plaintiff's failure to properly foreclose his deed of trust, and in cancelling and surrendering Botkin's note, and releasing the deed of trust securing the same, and accepting the warranty deed to the premises deeded to Botkin and defendant, and in executing and delivering the option contract whereby plaintiff, upon the payment, by Botkin, of that certain sum hereinbefore mentioned, would reconvey the premises to Botkin, did all and sundry the acts herein. mentioned "* * * solely in reliance upon the representations of said John M. Botkin that he was the sole owner in fee simple of said real estate, and in entire ignorance of any claim on the part of Lillie O. Botkin of ownership of any interest in or to said real estate." Plaintiff alleges, upon information and belief, that defendant, "* * * at all times knew that her said husband John M. Botkin, was holding himself out as the sole owner in fee simple of said real estate; that she at all times well knew of the obtaining of said judgment by this plaintiff against said John M. Botkin; of the execution of said trust deed by said John M. Botkin as the sole owner of said real estate; and of the execution of said warranty deed of May 12th, 1928, as the sole owner of said real estate; and of the execution by this plaintiff of said option of said date; and that she did furthermore ratify, assent to and acquiesce in each and all of said transactions; and did furthermore participate with said defendant John M. Botkin, in attempting to exercise said option contract," and thereby she "* * * is barred and estopped from asserting any right, title, interest, estate or claim in and to the undivided one-half (½) interest in said real estate now claimed by her, and that such interest, if any, she ever had therein, passed to and became the property of this plaintiff under and by virtue of said warranty deed of said defendant John M. Botkin, to this

plaintiff, dated May 12th, 1928, * * *." Plaintiff further alleges that both defendant and Botkin are insolvent; and further, that if defendant ever had any right, title, or interest in and to the real estate which was described in the two original deeds, in which she and Botkin, her husband, were mentioned as grantees, then plaintiff is subrogated to a lien against the interest of defendant therein, to an amount equivalent to one-half the total sums which Botkin paid as taxes, interest and improvements, and outstanding encumbrances against said property. The prayer of the complaint is that defendant be "estopped to claim any right, title or interest in or to said real estate," and that she be required "to make such conveyance or conveyances as may be necessary to perfect the legal title thereto in the plaintiff," and enjoining both defendant and Botkin from interfering with plaintiff's possession; and, in the alternative, if it shall be adjudged that defendant has some title or interest in said real estate, that plaintiff be fully subrogated, and the amount made a lien against said interest.

Defendant's answer and separate defenses may, for the purpose of this decision, be considered a general denial. Botkin, the codefendant, defaulted, and is not a party to this writ.

Defendant, when called as a witness for cross-examination under the statute, testified, in substance, that she did not know that her husband, Botkin, had executed his promissory note, payable to plaintiff, for the amount of judgment theretofore obtained by plaintiff against Botkin, and, to secure the payment of said promissory note, had executed a deed of trust upon the real estate belonging to defendant and Botkin, and learned of the same after the transaction was completed; that she learned that Botkin had executed a deed to plaintiff, purporting to convey the entire interest in the real estate, after the same was executed and delivered, and that neither the giving of the trust deed nor the delivery of the warranty deed were discussed between her and Botkin prior to

the execution and delivery thereof. She admitted that the checks for the original purchase price of the real estate, and the payments made thereon, as well as those given in payment of taxes and interest, were signed by Botkin, and that she was never asked by, and therefore never stated to, plaintiff that she owned or claimed any interest in the real estate, and that she was never consulted by plaintiff with reference to his business transactions with Botkin. Defendant admitted that after she learned that Botkin had executed the deed of May 12, 1928, she joined with him in his endeavors to find a purchaser for the real estate, under the terms of the option given Botkin by plaintiff, and also that, possibly, in referring to March 1, 1929, when the option given Botkin to repurchase the real estate from plaintiff expired, she might have told persons, to whom she was then talking, that she intended to move on March 1, 1929, and give plaintiff possession. She was interrogated about a loan on the ranch by the Federal Land Bank, and admitted that the application for it was made by Botkin, individually, but, before the loan was made, she also was required to obligate herself for the payment, and give an amortization mortgage on the ranch. Defendant further admitted that the ranch was assessed to Botkin, and, about March 1, 1929, she began a partition suit, in which she claimed a one-half interest in the ranch, and that this suit was afterwards dismissed without prejudice; that the money necessary to commence the partition suit may have been secured upon the check of Botkin; further, that in 1927, funds, with which to pay taxes on the ranch, were borrowed by Botkin from plaintiff, and the repayment secured by a chattel mortgage on the crops. Defendant identified exhibits which disclosed the fact that payments on the amortization mortgage were made from crops grown and harvested on the ranch, and that crop failures accounted for failure to promptly pay at times; that she was present when the deeds to the ranch were executed to Botkin and herself, and knew she was a

grantee therein; she also identified an exhibit wherein she obligated herself with Botkin to pay $20,000, which amount was the unpaid portion of the purchase price of the ranch, and also admitted that all interest on that amount was paid, and that indebtedness fully discharged on March 29, 1923; that the last payment of $10,000 was made on March 29, 1923, with funds added to a loan of $9,500 secured from the Federal Land Bank; that the Federal Land Bank loan was to be repaid in semi-annual installments of $308.75, and that seven of these semi-annual installments were paid with checks signed by Botkin.

William Proctor, the real estate agent who sold the ranch, in 1918, to defendant and her husband, testified that the owners of the ranch insisted that if the sale was made, the note and deed of trust, securing the balance of the purchase price, must be executed by Botkin and defendant; that this was communicated by witness to Botkin, who agreed thereto.

Three of the four grantors, in the deeds to the ranch, were called as witnesses and testified, in substance, that they insisted upon defendant's signing the note and deed of trust for $20,000, because the note and deed of trust were to be used in some business transaction in Missouri, and would not be acceptable, unless defendant signed the same with Botkin. The scrivener who prepared the deed suggested that, if defendant signed the note and deed of trust, her name must be inserted in the deeds conveying the property, and thereupon, Botkin's and defendant's names were inserted as the grantees.

Other witnesses were called and testified that defendant and Botkin were attempting, prior to March, 1929, to sell the ranch, and some of them stated that defendant had said that unless they raised sufficient money to pay plaintiff, before March 1, 1929, he would dispossess them.

Plaintiff testified, in substance, that prior to 1923, Botkin was indebted to him in approximately $5,000, which was evidenced by a promissory note; that about this time

he made an investigation of Botkin's financial standing and, from this investigation, determined that he was insolvent; that the ranch deeded to Botkin and defendant, in 1923, was worth about $17,000 or $18,000, and, with this valuation upon the ranch, Botkin was indebted about $5,000 over his assets; that in estimating this financial condition of Botkin, plaintiff talked to business men and examined the records, for the purpose of securing the information. Witness further testified that defendant had never informed him of her interest in the ranch; that he had never examined the title or caused the same to be done, until after March 1, 1929; that the first knowledge he had of the claimed interest of defendant was when served with summons in the partition action, begun about March 1, 1929. On cross-examination, witness testified that Botkin's note was reduced to a judgment; that when he received the note, secured by a deed of trust, in September, 1923, he satisfied his judgment; and when he secured a deed from Botkin, on May 12, 1928, he cancelled Botkin's note and requested the release of the deed of trust securing the same, and immediately executed and delivered the option to which reference is hereinbefore made. Witness testified that his business was "loaning money, and cattle business, and implement business, and a little of everything," but that in this transaction mentioned, he had never seen or required any abstract of title, but relied wholly and solely upon Botkin's statement, oft repeated, that he was the owner of the ranch.

A witness who was employed in one of the banks at Wray, Colorado, testified that, shortly before the trial, he made an examination of the records, discussed the question with some business men, and came to the conclusion that, in August, 1923, John M. Botkin was insolvent, and that the insolvency continued practically unchanged until the date of the trial. The witness testified that he knew nothing about the insolvency of Botkin, except as revealed by the records, i. e., the chattel mort-

gage records and the assessment declaration. The witness had testified that, in August, 1923, the total indebtedness of Botkin was $25,400, and that, in estimating his assets for the purpose of determining whether Botkin was solvent, found, "The assessed valuation of the land was $22,300. I used that basis for the land. The personal property is estimated at $6,000. * * * Assuming that he owned only half the land, there would be a deficit of about $3,600." Witness further testified that, in estimating the value of the personalty owned by Botkin, in August, 1923, he consulted the assessment rolls "and the chattel mortgage records and estimated the value, using both records." That he had never seen the ranch, and had no knowledge of its value, except as the same was reflected on the records.

At the trial it was stipulated that plaintiff had expended for taxes and installments on the amortization mortgage the sum of $2,668.84, and that interest thereon, to the date of the trial, was $208.74; and that Botkin, after August, 1923, had expended the sum of $3,844.38 in payment of installments on the amortization mortgage and taxes, and that interest thereon, to the date of the trial, was $1,524.02. The court determined that defendant owned a one-half interest in the ranch free "from the obligations surrounding a trust, either constructive or resulting"; that the evidence was insufficient to estop defendant from claiming and asserting her title to an undivided one-half interest in the property, but determined that plaintiff was entitled to judgment against defendant in the sum of $4,122.99, being one-half the total of plaintiff's payments on account of taxes and installments on the amortization mortgage, after he acquired Botkin's title, through his deed of May 12, 1928, together with the interest thereon, and also one-half the total of Botkin's payments on account of taxes and installments on the amortization mortgage, after August 27, 1923, when the court found that Botkin was insolvent, together with interest thereon, and entered its judgment accord-

ingly, and decreed that this judgment should be a lien on the interest of defendant in the ranch, and ordered her interest sold to satisfy the judgment.

Defendant's general demurrer to the complaint was overruled; her objection to the introduction of evidence was likewise overruled, and defendant interposed timely objections throughout the trial.

The only assignments of error which we deem it necessary to consider or discuss are: (1) That the court erred in decreeing that defendant was liable to plaintiff for any amount in excess of one-half the installments on the amortization mortgage, paid by plaintiff, and interest thereon; and (2) in decreeing that defendant was liable to plaintiff for one-half the taxes and amortization installments paid by Botkin, after August 27, 1923, and interest thereon.

The assignments of cross-error which we deem necessary to discuss are: (a) That the court erred in decreeing that defendant held title to an undivided one-half interest in the ranch, free from the obligations of a resulting or constructive trust; (b) in decreeing that defendant was not estopped to assert her title; and (c) in limiting plaintiff's right of subrogation. It has seemed to us advisable to discuss the cross-assignments first.

(a) "A trust in its simplest form is that relation between two persons by virtue of which one of them holds property for the benefit of the other." *Cree v. Lewis,* 49 Colo. 186, 189, 112 Pac. 326. "Resulting trusts are trusts that the courts presume to arise out of the transactions of parties, as if one man pays the purchase-money for an estate, and the deed is taken in the name of another. * * * A constructive trust is one that arises when a person, clothed with some fiduciary character, by fraud or otherwise gains some advantage to himself. Courts construe this to be an advantage for the cestui que trust or a constructive trust." Perry on Trusts and Trustees (7th Ed.), Vol. 1, page 17. "A resulting trust

may be defined as one which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears, or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title.'' 26 R. C. L. 1214. ''Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'' 26 R. C. L. 1232; *Walker v. Bruce,* 44 Colo. 109, 117, 97 Pac. 250. In order to establish a resulting trust, the evidence must be strong and convincing. *Hines v. Baker,* 89 Colo. 1, 3, 299 Pac. 5; *Cortez Co. v. Stabler,* 84 Colo. 64, 65, 268 Pac. 526, and cases therein cited; 26 R. C. L. 1231.

In order to establish a resulting trust, it is said: ''It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt.'' Pomeroy's Equity Jurisprudence (4th Ed.), Vol. 3, p. 2357. Further, in discussing the degree, as well as the quantum, of proof, necessary to establish a constructive trust, the same author says: ''The existence of a constructive trust, as of a resulting one, must be proved by clear, unequivocal evidence.'' Vol. 3, p. 2421. In Perry on Trusts and Trustees (7th Ed.), Vol. 1, p. 400, in discussing the degree and quantum of proof, necessary to establish a constructive trust, we find the following: ''Parol evidence, however, is not favorably received by courts in any case, and they will not act upon it against written instruments, unless it is exceedingly clear and certain, and uncontradicted by other evidence.'' In *Vosburgh v. Knight,* 71 Colo. 473, 475, 207 Pac. 1112, it is said that a constructive trust may be established by ''strong'' evidence. See also Trusts, 39 Cyc. 192; Nichols Applied Evidence, Vol. 5, p. 4531; 26 R. C. L. 1251. The burden

of establishing either a constructive or resulting trust is upon him who seeks its enforcement. Where, as here, the husband acquires and pays for real property, and causes his wife's name to be inserted in the deed as one of the grantees therein, there is a presumption that he intended it as a gift or advancement, and the burden of showing otherwise is upon him who asserts it. *Hines v. Baker,* 89 Colo. 1, 3, 299 Pac. 5; *Cortez v. Stabler,* 84 Colo. 64, 65, 268 Pac. 526, and cases therein cited; see also Perry on Trusts and Trustees (7th Ed.), Vol. 1, p. 228 et seq. It is unnecessary to reiterate the circumstances surrounding the making and executing of the deed to this ranch; and the reason for defendant's name being inserted therein as a grantee is immaterial, because, in this case, plaintiff himself admitted that Botkin was solvent at the time the ranch was purchased, and there is no contention made that he became insolvent until about 1922.

■■ It is contended by plaintiff that since the purchase price of the ranch, and the encumbrances and interest, as well as the taxes and improvements, were paid by check, signed by Botkin, that this is evidence of sufficient weight to overcome the presumption of gift or advancement to defendant. Botkin and defendant were husband and wife; they were jointly engaged in operating a ranch, upon which they had their home; for aught that appears in the record, one-half or all of the sum of $12,000, paid when the deeds to the ranch were delivered, was defendant's money, and it may well be assumed that it was the accumulation of their joint efforts; it may be also assumed that, while Botkin was operating the ranch, defendant was carrying her share of the burden, by assisting him in the many ways that farmers' wives find necessary and possible; and if, under the circumstances of this case, the money received from the sale of crops belonged to Botkin alone, as his exclusive property, defendant would be placed in a state of servitude, for which she might hopefully expect to realize only her room and

board and clothing, in return for carrying a full share of her load. So far as the record discloses, the only money Botkin had, with which to pay anything, was that derived from the sale of his crops, and one-half of that belonged to defendant, by virtue of her interest in the ranch, if the conveyance is upheld, even though it be held that she was not entitled to share, because of the marital relation existing between them. It is unnecessary to comment upon the numerous authorities, cited to support plaintiff's position; we are content to stand upon the authorities in this jurisdiction, which we believe to be in harmony with those in other jurisdictions. The evidence was wholly insufficient to overcome the presumption that the interest in the ranch was a gift or advancement, and made at a time when it was not only the right, but, perhaps, the duty of Botkin to share the result of their joint efforts with defendant. The record is entirely devoid of any evidence from which either a resulting or a constructive trust could be found, and the trial court properly so held. Botkin and defendant, then, being co-owners of the ranch, it was not only right, but it was the imperative duty of Botkin, if he was in exclusive possession, as is contended, to pay the encumbrances, interest, and the expenses, necessary to prevent waste, from the funds, realized from the sale of crops raised thereon, and from any other sources of income, immediately connected with the ranch, provided they were sufficient to make these payments. 7 R. C. L. 824. Before plaintiff is in a position to take advantage of these payments by Botkin, he must first show that Botkin paid more than his pro rata share, and thereby established the relationship of debtor and creditor between Botkin and defendant. The duty which Botkin owed defendant, in making these payments, was of a dignity with, if not superior to, any which he owed plaintiff.

 (b) Counsel for plaintiff say: "As to the estoppel, we conceive the rule to be that estoppel cannot ordinarily be predicated on mere silence as against the effect

of a recorded instrument, in the absence of circumstances tantamount to a fraudulent intent upon the part of the party sought to be estopped. However, we submit that in this case, there is found such a remarkable series of dealings over a long period of years, that a fraudulent intent on the part of the defendant, Lillie O. Botkin, is made very evident.'' Plaintiff testified that he relied upon and believed Botkin, when he told him that he was the owner of the ranch, and that he acted upon this representation; and yet, section 4902, C. L. 1921, prevents credit being given this statement, for it is uncontradicted that the deeds of conveyance to this ranch were promptly filed for record in the office of the county clerk and recorder, in the county in which it was located, which also is the county of plaintiff's residence. Unless we disregard the plain provisions of section 4902, C. L. 1921, plaintiff is not permitted to say that he lacked the knowledge with which the law charged him. The recording of the deeds was notice to the world that defendant owned a one-half interest in the ranch, and we are at a loss to know what more was expected of her, in order to enjoy the full benefits of the title thus conveyed. Plaintiff testified that he did not ask defendant and she did not tell him that she owned any interest in the ranch. Defendant was under no legal duty to volunteer information respecting her interest. If plaintiff did not wish to rely upon the record, it was his privilege to ask concerning the title, and this he failed to do. If the record is not notice to the world, we can conceive of no certain way that one may protect his title. When we remember that plaintiff testified that he was in the business of loaning money on real estate and other security, in which business he had been engaged many years, it would seem that he was endeavoring to secure relief, in a court of equity, from the consequences of his own neglect. The record discloses that defendant signed the deed of trust for $20,000, with which to pay the balance of the purchase price on the ranch; she signed the amortization

mortgage for $9,500, and did every act necessary to secure and protect her interest, as disclosed by the deeds; and unless and until the legislature provides some more effective method of giving public notice of titles, and some equitable remedy is devised for relieving careless persons of the consequences of their own mistakes, without unjustly burdening others, we are not disposed to hold that the doctrine of estoppel will afford relief.

(c) The trial court determined that Botkin became insolvent in August, 1923, and, from that date until the time of the decree herein, Botkin had paid the sum of $3,844.38 in installments on the amortization mortgage, and taxes; and with one-half thereof, i. e., $1,922.19, defendant was charged, and also with interest thereon, from the date of payment by Botkin until the date of the decree, i. e., $762.01; for the sum total of these amounts, i. e., $2,684.20, plaintiff was given judgment; and a lien for this last amount was awarded plaintiff, and the interest of defendant in the ranch ordered sold to satisfy this judgment. The evidence on the question of insolvency was meager and unsatisfactory, and it is doubtful whether or not it was sufficient to warrant any finding thereon; however, we do not deem the insolvency of Botkin, under the circumstances of this case, to be material. In the absence of evidence to the contrary, we may assume that these liens were discharged, as they should have been, from the proceeds derived from the sale of crops and other income from the ranch, to one-half of which defendant was legally entitled; and, if this assumption is erroneous, the burden of so proving was upon the plaintiff, and this burden he failed to carry. The evidence is that the payment of both installments on the amortization mortgage and taxes were paid by checks signed by Botkin; the source of the funds with which the checks were paid remains an enigma, so far as the record is concerned. It is, however, apparent from the record that when the proceeds from the sale of crops grown on the ranch were sufficient to do so, installments

238

and taxes were paid; otherwise they were in default. The presumption is that defendant paid her pro rata share of all legitimate expenses incidental to her ownership in the ranch, or that these expenses were paid out of funds belonging to her, and there is no evidence in the record to rebut this presumption. Under the evidence herein, the trial court erred in finding that defendant was indebted to Botkin for one-half the installments and taxes, paid from August, 1923, until the date of the decree herein, and in subrogating plaintiff's to Botkin's rights to claim repayment.

1. After May 12, 1928, when Botkin attempted to convey the whole title to the ranch to plaintiff, subject only to the amortization mortgage, plaintiff paid the sum of $1,906.78 to the Federal Land Bank, in discharging installments as they fell due. This amortization mortgage was executed by defendant and Botkin, and was a lien on both their interests in the ranch. It is obvious that if plaintiff had desired to do so, he could not relieve the ranch of the lien of this amortization mortgage by the payment of one-half the installment; and, in order to avoid the consequences of a foreclosure sale, he was obliged to pay the entire installment, which payment inured to the benefit of defendant equally with plaintiff, and was the only course open to plaintiff for the protection of his equity in the ranch. The trial court properly held that plaintiff was entitled to judgment for one-half the payments on the amortization mortgage, together with statutory interest thereon, i. e., $82.74, and entered judgment in favor of plaintiff for this amount, and awarded a lien therefor. 6 R. C. L. 1049; 13 C. J. 828; 7 R. C. L. 863, 870, 871.

2. After May 12, 1928, plaintiff paid the whole tax due on the ranch, for which he claimed, and the court allowed him, a lien on defendant's interest to the extent of $402.66, being half the taxes paid by plaintiff, together with statutory interest thereon, from the date of payment until the time of the decree. Under the provisions

of sections 7248, 7435, and 7436, C. L. 1921, plaintiff could protect his interest in the ranch from tax liens and sales, and the payment of the taxes due upon defendant's interest was a voluntary act upon his part, and one for which he cannot claim contribution. *Hallett v. Alexander,* 50 Colo. 37, 52, 53, 114 Pac. 490. In allowing judgment for the sum of $402.66, on account of taxes and interest thereon, the trial court erred.

We have examined the other assignments of error and cross-errors which counsel have argued, and believe it is unnecessary to discuss them.

■ It may be said that Pyle relied too implicitly upon the statement of Botkin, relative to the title to the ranch, and that his representations amounted to fraud and deceit, and that Pyle was thereby misled to his damage; but, if this be so, Pyle must look to the perpetrator of the fraud for relief, and he is not entitled to be made whole at the expense of one who was in no manner responsible for his loss. *Abley v. Davies,* 84 Colo. 398, 402, 270 Pac. 880; *Bray v. Trower,* 87 Colo. 240, 245, 286 Pac. 275.

■ The court awarded plaintiff judgment in the sum of $4,122.99 and costs against defendant, and provided in its decree that plaintiff have a lien against the undivided one-half interest of defendant in the ranch for the payment of this amount, and that this undivided interest of defendant be sold to satisfy this judgment. The total amount of this judgment was computed as follows: Botkin, after August, 1923, when the court found him to be insolvent, had paid a total sum of $3,844.38 on account of installments on the Federal Land Bank's amortization mortgage and taxes; for one-half of this amount, i. e., $1,922.19, together with interest thereon, amounting to $762.01, or a total of $2,684.20, the court erroneously considered an item in computing its judgment. Also, plaintiff paid taxes upon the entire ranch after May 12, 1928, and the court computed the amount which defendant owed plaintiff on this account, together with interest, at

$402.66, and this we have determined as erroneous. From the total judgment of $4,122.99 there should be subtracted the sum total of $2,684.20 and $402.66, i. e., $3,086.86, which would leave the sum of $1,036.13, which we determine to be the amount of the judgment to which plaintiff is entitled.

The judgment is accordingly reversed and the cause remanded to the district court of Yuma county, with instructions to set aside and vacate its judgment herein, and, in lieu thereof, to enter judgment in favor of plaintiff, and against defendant, for the sum of $1,036.13, with interest thereon from October 18, 1929, and decree that this amount shall be a lien upon the undivided one-half interest of defendant, Lillie O. Botkin, in and to the real estate, in the complaint specifically described, and providing, if necessary, that the interest of defendant in and to said real estate may be sold to satisfy the judgment. Each party to bear his own costs in this court.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD concur.