No. 17,016.

WOODRUFF *v.* CLARKE.
(262 P. [2d] 737)

Decided October 26, 1953.

Mr. JOHN T. DUGAN, for plaintiff in error.

Mr. DONALD SCUDDER, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS action originated by the filing of a complaint by Alice Clarke, now defendant in error, to establish interest in realty, for satisfaction of a judgment, and for declaratory judgment. On a judgment favorable to her, defendant Fern Woodruff, now plaintiff in error, seeks review mainly on the ground that the judgment is contrary to the law and the evidence, and the Master's report is based upon insufficient evidence.

On December 21, 1938, Alice Clarke obtained a judgment on a note against Fred F. Woodruff in the district court of Denver in the sum of $1,355 for money loaned to him for investing in a mining adventure, and on May 17, 1946, more than eight years thereafter, she commenced this action in an effort to establish and reach an interest of Fred F. Woodruff in real property held in the name of his wife, Fern Woodruff, on the allegation and theory that title to the property involved was placed in the name of the wife, Fern Woodruff, to prevent said property from being reached by plaintiff for the satisfaction of her judgment. After appropriate motions were overruled, defendants answered, admitting that plaintiff had obtained a judgment against Fred F. Woodruff that

was unsatisfied; admitted that they had held title to certain property in joint tenancy; denied that the proceeds from the joint tenancy property was traded or used as a down payment on the property herein involved; specifically denied that title to the present property was taken in the name of the wife, Fern Woodruff, to defraud the creditor; denied that Fred F. Woodruff had any interest whatever; but admitted that he had made payments of interest on the mortgage executed by his wife as part of the purchase price; and finally, alleged that plaintiff had been guilty of laches.

The testimony shows that prior to January 9, 1942, defendants owned certain real property in joint tenancy known as the Hudson street property which was purchased for the sum of $7,250, and it is undisputed that the down payment thereon of $1,800, was made out of funds that belonged to the wife, Fern Woodruff; that the monthly payments thereon amounted to approximately fifty dollars per month, including interest and principal; and title thereto was taken in joint tenancy due to the fact that the wife was about to undergo a Caesarian operation. They occupied this property for about twenty-two months and sold it for $7,000, receiving an equity of $1,600, which was paid to Fern Woodruff, out of which she turned over $400 to her husband for payment of his personal debts and the balance of $1,200 was used by the wife as a down payment on the property here involved, the purchase price of which was $4,500, and she executed a deed of trust in the sum of $3,300 for the balance of the purchase price, and the note secured thereby was signed by her husband Fred F. Woodruff. This note provided for quarterly interest payments. The evidence is undisputed that the wife, Fern Woodruff, made one payment of $1,500 on the principal out of her personal funds. The evidence also discloses that these personal funds of Fern Woodruff came to her as a gift from her mother-in-law, the mother of her husband Fred F. Woodruff, referred to as his mother's estate, amount-

ing in all, to between three and four thousand dollars. It seems to be undisputed that the mother-in-law was desirous of being assured that her daughter-in-law and children would have a home, and the money was given to the daughter-in-law instead of her son because she felt that he was not a good manager in financial matters. At this point it seems clearly established that the original down payment made on the joint-tenancy property was from this fund which was a gift to defendant Fern Woodruff; that $1,200 of the equity received from the sale of the joint tenancy property was used as a down payment on the property now involved, and the further payment of $1,500 came from the same fund in the hands of the wife, Fern Woodruff; that defendant Fred F. Woodruff has occupied the present property, which is in the name of his wife, as his home, and has, as a part of his obligation as a husband and father, paid some interest on the remaining indebtedness which amounts to less than $2,000. There is no evidence whatever in this record that overcomes the presumption that the various items of interest were not gifts from the husband to the wife, and no evidence whatever that he ever paid any part of the principal or purchase price of the property.

The trial court, from insufficient evidence, determined that the husband, Fred F. Woodruff, has an interest in this property equal to that of his wife and referred the case to a Master to determine the amount of the proportionate interest. It appears that the Master felt that he was not free to pass upon the question of whether or not the husband actually had an interest in the property, since that had been determined by the reference order, and being bound thereby, did determine that defendant husband had a one-half interest in the $1,200 received from the equity of the joint-tenant property and used as a down payment on the property now in the wife's name and involved in this action. Plaintiff had filed a lis pendens, and to be relieved of this, defendant was required to post a bond in the sum of $600 to satisfy the

judgment entered in favor of plaintiff to secure her lien on the interest of the husband thus determined.

It is noteworthy that at no time did Fred F. Woodruff, the husband, make any objection to the retention by his wife of the $1,200 received from the equity of the joint-tenancy property, or that he ever made any claim whatever to any interest in either of the properties. It is undisputed that during all of the years, defendant wife never knew of plaintiff's claim or her judgment against defendant husband, Fred F. Woodruff, and there is no intimation whatever that any of the money received by him from plaintiff for a mining venture ever reached the hands of the defendant wife, or that any part of it went into either of the properties herein referred to. The transactions concerning the purchase of both these properties over a period of more than eight years were open and aboveboard and all of record; and no intimation that any facts here referred to were concealed by them at any time. It is undisputed that the original payment of $1,800 made by defendant wife on the original joint-tenancy property was out of her own funds, received as a gift from her husband's mother.

The judgment herein, which we believe is without proper foundation, seems to center around the disbursement of the $1,600 equity received from the sale of the joint-tenancy property, whereby the wife retained $1,200 and gave her husband $400 for the payment of some of his personal debts. It seems to be contended that the husband still had $400 coming to him out of that transaction. There is strong presumption that he did not make any claim as being entitled to one-half of that equity under the circumstances, but considered that it was property properly being returned to his wife who had made the full down payment of $1,800, and that the $400 he received was purely one of favor or accommodation to him. However, plaintiff holding the judgment desires to step into his shoes and claim that he was entitled to one-half of the amount of this equity so received

and to that extent she should have a lien on the present property standing in the name of the wife, which had been purchased wholly by the funds in her hands that were received from her mother-in-law as a gift. A calculation of the monies paid by the husband as interest on the principal due on the property does not approach being a reasonable amount that would be paid by him in lieu of rent in providing a home for himself and under his duty to provide for and support his wife and children. These figures show that whatever he paid was at the rate of $16.50 per month for interest until his wife had reduced the principal by a payment of $1,500, and then his interest payments would amount to approximately nine dollars per month.

An examination of the Master's finding and record discloses no determination that the husband, Fred F. Woodruff, had an interest in the property in any amount; and there is no finding that he made any payments on the purchase price.

The following appears in the Master's report: " * * * your Master feels that it would be improper at this time to present conclusions of law beyond stating that one-third of the down payment was, *under your Honor's ruling,* made from funds the property of Fred F. Woodruff." We find no such ruling by the trial court in making the order of reference, and otherwise, the Master's report shows no findings of fact as to how much, if any, money was paid by Fred F. Woodruff for the purchase of the property involved herein. And further, there is no finding to the effect that the wife, Fern Woodruff, was a trustee for Fred F. Woodruff, although in the order of reference the court decreed that the husband had an interest in the property, and that such interest was held by the wife as trustee. We find nothing in this record from which either a resulting or a constructive trust could properly be said to exist. The burden was on plaintiff to establish either of such trusts if she sought enforcement thereof, and she did not meet this burden.

Our court has so held in a case presenting much stronger claim than plaintiff here has alleged or established.

"The burden of establishing either a constructive or resulting trust is upon him who seeks its enforcement. Where, as here, the husband acquires and pays for real property, and causes his wife's name to be inserted in the deed as one of the grantees therein, there is a presumption that he intended it as a gift or advancement, and the burden of showing otherwise is upon him who asserts it." *Botkin v. Pyle,* 91 Colo. 221, 14 P. (2d) 187.

Other questions are presented that we deem unnecessary to discuss or determine. The underlying theme of this action is fraud in the concealment of property. Over and over again it has been said, fraud is never presumed, and, of course, it is not a matter of speculation; it must be clearly established if alleged. A reading of the entire record in the present case fails to disclose even any hint at an approach to fraud, because all of the transactions admittedly were in the open, and here we have a case not where the husband purchased the property and placed it in his wife's name, but where the property was purchased by the wife with her own funds, and the fact that the husband paid some part of the interest, which was an insignificant part of an amount due from him under his duty as a husband in the support of his wife and family in the maintenance of a home does not warrant the trial court in assuming that he had an interest in the place in any extent whatever. Our statutes, section 1, chapter 108, volume 4, '35 C.S.A., provide that any gift of such money from the husband shall be the sole and separate property of the wife and not subject to the disposal of the husband or his creditors. The evidence in this case does not support the finding of the trial court which had its controlling effect on any finding made by the referee. The finding that there was a trust is not supported by the evidence and the language used in *Botkin v. Pyle, supra,* is most applicable, that to establish such a trust the " * * * evidence must be clear,

394

strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt." The beneficiary here would be defendant husband since plaintiff, as a judgment creditor, would have no rights superior to his.

For the reasons herein stated, the judgment is reversed and the cause remanded with direction to dismiss the action.