No. 15,138.

VANDEWIELE *v.* VANDEWIELE.

(136 P. [2d] 523)

Decided April 5, 1943.

Mr. LEWIS M. PERKINS, for plaintiff in error.

Mr. REESE McCLOSKEY, Mr. CHARLES J. BEISE, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action involves a dispute between two brothers as to the ownership of a one-fifth interest in certain real and personal property in Durango. Emiel Vandewiele, who was plaintiff below, sued Tom Vandewiele to compel him to convey the one-fifth interest to him (Emiel), Tom, with two others, having acquired title through foreclosure. The trial court, without a jury, decreed in Emiel's behalf as to the real estate, but not as to the personalty. Tom seeks reversal on application for supersedeas.

The litigants and their two brothers, one of whom, Joe, plays some part in the case, lived with their father on a ranch in San Juan county. About the year 1920, the boys having grown to maturity, and having received some financial assistance from their father, started out for themselves.

In 1923, the Pittman Motor Company, in order to finance certain building and business operations, issued thirty notes of $500 each secured by deed of trust, some of the notes being purchased by the father for the three older boys. There is some dispute concerning the distribution of the notes, but eventually Emiel became the owner of six of them and Tom five, all of which were kept in Emiel's safety deposit box in the bank, Emiel looking after the business in connection with these and some other mortgages in which the brothers were interested. Up to about 1930 there apparently had been no friction or misunderstanding between Tom and Emiel. There was mutual trust and confidence to the extent that there never had been even a memorandum kept of their dealings.

In 1928, the motor company having defaulted on its notes, it became necessary to foreclose the deed of trust securing their payment and for the purpose of foreclosure, Ole Lee, Felix Vandewiele (the father) and Tom were named as the owners of the thirty notes. Foreclosure proceeded in the usual course, and in the decree Tom was awarded 11/30 of the title.

Emiel's story is, that just prior to the foreclosure Tom came out to his place and explained how the foreclosure was going to be handled, and said he had to have the notes, whereupon Emiel withdrew the notes from the bank and delivered them to Tom with the understanding that he would look after Emiel's interest and deed him his share in the property after the foreclosure.

Following the foreclosure, the property was sold on contract to another firm which also defaulted, but while the contract was in force an escrow agreement was held

by a bank under which Emiel received his one-fifth interest in all payments made, and the evidence is undisputed that each party paid his proportionate share of the taxes.

The controversy in the case did not arise until some time in 1938 when Tom became seriously ill, and Emiel made demand upon him for his interest. It then developed that while Tom acknowledged Emiel had owned a one-fifth interest since 1930 that he, Tom, was not to convey until Emiel paid $3,000 under an alleged written agreement to that effect. Tom testified that his copy of the agreement had been destroyed by fire. Emiel flatly denied that there was any such contract, and insisted that he did not owe Tom anything.

Brother Joe sided with Emiel and related how at one time when Emiel and Tom had had an argument over some water that Tom said: "I have got hold of Emiel and I will show him something." Joe also corroborates Emiel as to the original agreement which was consummated in a turnip patch at Sunnyside when the three brothers were present.

There are fifteen hundred folios in this record and a number of exhibits, all of which we have carefully read and considered. Most of the testimony is in direct conflict, but we are satisfied that the record supports the judgment.

While numerous points of error are specified, many of which were not raised in the motion for a new trial, we deem it necessary to consider only three legal propositions on which we believe counsel for Tom pins his hope largely for reversal, viz.: 1. That this is an express trust, which cannot be established by parol if the statute of frauds is relied upon as a defense; 2. that the cause of action was barred by the statute of limitations; 3. the court's refusal to grant an accounting in Tom's behalf.

■ 1. Assuming the legal relationship relied upon by Emiel to be that of an express trust (the trial court found there was a contract of agency), it is not neces-

sarily fatal that some reliance be had upon oral testimony where there has been part performance. The testimony other than the oral statement relied upon, tends to establish Emiel's story. The evidence is pretty convincing that he was the owner of the six notes—two of them having been purchased from strangers, which transactions were vouched for by third parties. The county records and the escrow agreement at the bank support his story, and while a different deduction can be made in regard to the foreclosure, Emiel's story is also consistent with that. In the light of these facts the rule set forth in *Kinley v. Kinley*, 37 Colo. 35, 86 Pac. 105, upon which Tom's counsel relies so strongly, is not applicable here. One statement appearing in the opinion in that case is sufficient to distinguish it from the one at hand, i.e., "the only evidence to establish this agreement was parol."

 In the instant case the trial court might have found that plaintiff's exhibit 10, signed by Tom, directing the bank "to deliver at once all papers in connection with Escrow #2093, between Felix Vandeweile, Tom Vandeweile, Emil Vandeweile, and Ole M. Lee, parties of the first part," etc., was a sufficient memorandum to take the case out of the statute of frauds. In addition to that, the Kinley case, supra, is grounded upon *Davis v. Davis*, 18 Colo. 66, 31 Pac. 499; and that of *Von Trotha v. Bamburger*, 15 Colo. 1, 24 Pac. 883, an analysis of which indicates that the result reached in the case at bar is not necessarily inconsistent with the law as therein expressed. While it is contended that only an express trust was pleaded and that at best only a resulting trust was shown, there was no objection based on this alleged variance interposed at the time the evidence was offered, hence we consider the point waived, and it is well established that the statute of frauds has no application in cases of resulting or constructive trusts. *O'Byrne v. McNeil*, 90 Colo. 226, 7 P. (2d) 956. The confidential relationship in the instant case is admitted.

■ 2. The statute of limitations in this case did not begin to run until Emiel made his demand upon Tom and Tom refused to convey. *Ballard v. Golob,* 34 Colo. 417, 83 Pac. 376, wherein we said (p. 426): "We do not think that it appears from the complaint that this section is applicable. The trust, such as occurred by the taking of a patent by one co-owner in his own name, is an express trust and a continuing one, and an action for breach of the trust does not accrue until the trust is repudiated and the knowledge of such repudiation brought home to the cestui que trust."

■ That there is no distinction between express trusts and resulting and constructive trusts so far as laches and the statute of limitations is concerned, see, *Schlosser v. Schlosser,* 62 Colo. 270, 275, 162 Pac. 153, quoting from *French v. Woodruff,* 25 Colo. 339, 54 Pac. 1015. See, also, 65 C.J., pp. 1024, 1028.

■ 3. Reverting to Tom's claim for $3,000 and his request for an accounting, it is doubtful if he had a right to urge it in this case in the absence of any reference to it in his amended answer. 65 C.J. 1022. The ruling excluding the evidence relating to it was proper under the pleadings, and since no complaint is made in the motion for a new trial concerning the court's rulings on the pleadings in this regard, we need not consider this alleged error further.

The judgment is affirmed.

Mr. Chief Justice Young, Mr. Justice Burke and Mr. Justice Jackson concur.