No. 18,297.

HENRY B. GRUENWALD *v.* DOROTHY M. MASON.
(335 P. [2d] 879)

Decided February 24, 1959.

1

Mr. PAUL SNYDER, for plaintiff in error.

Messrs. TRUITT & ELSNER, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as Henry, was defendant in the trial court where defendant in error, hereinafter referred to as Dorothy, was plaintiff. Dorothy filed an action to secure a partition of ranch property in Elbert county. Upon trial to the court her prayer for partition was granted and the property was ordered sold. Henry brings error.

Henry and Dorothy were formerly husband and wife. Dorothy went to Albuquerque, New Mexico, and on October 24, 1952, she secured a divorce from Henry. Thereafter she married one John Mason and on June 11, 1953, while married to him she went to the bank in Kiowa, Colorado, and, after being advised by her banker not to do so, she executed and recorded a quit claim

deed to the property in dispute, naming Henry as grantee therein. After recording the deed she caused it to be delivered to him by mail.

The deed was executed, recorded and delivered without Henry being present; he paid no consideration for it; and there was no agreement between him and Dorothy as to what he was to do with the property. He made no promises as an inducement to Dorothy to execute the deed, and he did not ask that she do so.

It was alleged in the complaint filed by Dorothy that she and Henry were co-owners of the land prior to the execution of the deed, and that she conveyed it to him to enable him to sell the property, and that Henry did not sell the property "as agreed." There is no evidence whatever of any "agreement" between the parties.

The trial court found, inter alia:

"That the issues and equities herein are in favor of the plaintiff; that the allegations of the complaint are true; that the parties are the owners of an undivided one-half interest each in and to the real property hereinafter described; that the right to partition has been established, but that division or partition in kind cannot be had; that both parties in open court agree that it is not necessary to appoint a commissioner to make partition and that such appointment is unnecessary; that previous to June 11, 1953, the parties were the record owners of the real property hereinafter described, each party owning a half interest therein, and on said June 11, 1953, the plaintiff executed and delivered to defendant a deed for her interest in said real estate; that plaintiff made and executed the deed for the purpose of expediting the sale or mortgage of said premises; that plaintiff did not intend to convey her beneficial interest to defendant and that the defendant holds the naked title for the benefit of himself and plaintiff.

"Now therefore the Court concludes: That plaintiff is entitled to partition, but that partition in kind cannot be made; that a public sale of said premises should be

made, after due advertisement, and that the acting sheriff of Elbert should be appointed commissioner to make the sale and to convey to the purchaser all right, title and interest of the parties hereto; * * *."

As grounds for reversal counsel for Henry argues that there is no basis in law for partition of the land; that there are no facts to justify a holding that Henry held the title under a constructive trust because: (1) There was no evidence that the deed was procured by fraud, duress, undue influence or mistake; (2) that there was no showing that a confidential relation existed as between the parties; (3) that there was no evidence that the transfer was made as security for the debt of the grantor; and (4) that there is no showing whatever that Henry accepted the role of trustee of the title to the land, or occupied any position other than as a donee of the title.

At the conclusion of the evidence offered by plaintiff Dorothy, counsel for Henry moved to dismiss the action for failure to make a prima facie case. The motion was denied. It was renewed at the close of all the evidence and was again denied. We think it advisable to quote briefly from the testimony given by Dorothy as follows:

"Q. And where was Mr. Gruenwald living? A. At Roggen. Q. And your testimony on page 11, you understood at the time he would try to borrow money? A. Or sell it. Q. Now, Mr. Gruenwald didn't give you any money for this, did he? A. No, sir. Q. He didn't make any promises to you, did he? A. No, sir. Q. At the time you went in to see Mr. Backlund [the banker who prepared the deed for her] did you talk this thing over with Mr. Backlund? A. Not to any extent. Q. You told Mr. Backlund what you intended to do? A. Yes, sir. Q. Did he give you any advice? A. Some. Q. What advice did he give you? A. He thought I was being foolish, or words to that effect."

\* \* \*

"Q. Now, you subsequently deeded your interest so far as the record is concerned to Mr. Gruenwald, is that

true? A. I did. Q. How did you happen to do that, Mrs. Mason? A. I had tried repeatedly to borrow money on my share of that ranch and Mr. Gruenwald had tried to borrow money, he said, and it had been for sale for months and months and it had never been sold. I needed some money and Mr. Gruenwald needed some money, we weren't living on the ranch, either one of us, and that would enable us — I was told several times by several different bankers and loan companies it would be much easier to borrow money or sell that ranch if that title was under one name. Q. So what did you do? A. So I deeded the title to Mr. Gruenwald. Q. Mrs. Mason, was that deed made for the purpose of giving or conveying to him for his own use? A. Absolutely not."

* * *

"Q. Mrs. Mason, did Mr. Gruenwald ask for you to convey the land to him? A. I have never said he did; he didn't. Q. And you just told him what you were going to do and you told him why you were going to do it? A. That's right."

Prior to the execution of the deed the income from the property had been divided between Henry and Dorothy. After the deed was delivered Henry occupied the property and made no division of the income therefrom. He paid the taxes thereon.

The action was filed by Dorothy in March 1955, about twenty-one months following the delivery of the deed. As far as the record discloses Dorothy made no demand for a share of the income, for a cancellation of the deed, or for any interest of any kind following the delivery of the deed, nor did she in any manner contact Henry prior to the institution of the suit for partition.

Question to be Determined.

*Where an owner of an interest in land conveys the same by deed to a grantee named therein, demanding or receiving no consideration therefor, and such conveyance was not procured by fraud, duress, undue influence or as the result of any inducement whatever by the*

*grantee, and no fiduciary relationship existed between the parties; where no promise or agreement was made concerning the use to be made by the grantee of the land conveyed to him; can the grantor, in an action to partition the land and re-establish her former interest therein, prevail on the sole ground that she did not intend to divest herself of title but intended solely that it should be held by the grantee in trust for her use and benefit?*

■ The question is answered in the negative. Counsel for Dorothy contend that, "The facts of this case disclose a resulting or constructive trust. It more clearly presents a case of constructive trust." As authority for this position they quote the following cases:

(1) *Lipscomb, et al. v. Nichols, et al.,* 6 Colo. 290, in which land was purchased with funds provided by one party and title thereto was taken in the name of another. This court in that case correctly held that a resulting trust existed and that a court of equity would lend its aid to defeat a fraud notwithstanding the provisions of the statute of frauds. That case is wholly inapplicable to the facts of the case at bar where admittedly there was no fraud.

(2) *Hall v. Linn,* 8 Colo. 264, 5 Pac. 641, in which mining property was conveyed by deed absolute on its face under an agreement that the grantee would operate the mine, pay the debts, sell the mine, compensate himself for his services and pay any balance to the grantor. After receiving title to the property the grantee refused to comply with the terms of the agreement. The court in that case correctly held that the facts disclosed a constructive trust. That case likewise is inapplicable to the case at bar because Dorothy by her own statement admits that there was no agreement.

(3) *Warren v. Adams,* 19 Colo. 515, 36 Pac. 604, was another case in which real estate was purchased and the named grantee was other than the person by whom the purchase price was paid. The court there correctly held that the beneficial interest inured to the party who paid

the consideration. There is nothing in that case comparable to the facts in the case at bar.

(4) *Walker v. Bruce,* 44 Colo. 109, 97 Pac. 250, in which this court stated, inter alia:

"Constructive trusts are such as are raised by equity in respect to property which has been acquired by fraud; or where, although acquired without fraud, it is against equity that it should be retained by him who holds the legal title. — Washb. R. P., §1430."

(5) *Hakansen v. Hakansen,* 48 Colo. 190, 109 Pac. 427, in which property was purchased with funds of the wife and title taken in the names of husband and wife. The wife without consideration conveyed her interest to the husband *upon an agreement to do certain things* which the husband thereafter refused to do. That case differs from the case at bar in that here there was no agreement.

(6) *Botkin v. Pyle,* 91 Colo. 221, 14 P. (2d) 187. In this case the court discussed resulting trusts and constructive trusts at some length. In the opinion the following statement concerning constructive trusts was cited with approval:

"A constructive trust is one that arises when a person, clothed with some fiduciary character, by fraud or otherwise gains some advantage to himself. Courts construe this to be an advantage for the cestui que trust or a constructive trust."

We approve this statement as being a correct pronouncement of the rule, but in the record before us we find no facts justifying its application here.

Three other Colorado cases cited by counsel for Dorothy are *Jones v. McKinney,* 107 Colo. 215, 110 P. (2d) 258; *Vandewiele v. Vandewiele,* 110 Colo. 556, 136 P. (2d) 523; and *Hildebrand v. Rolf,* 100 Colo. 304, 67 P. (2d) 492. These cases are clearly distinguishable from the case at bar and no good purpose would be served in pointing out their inapplicability to the facts before us.

In Restatement of the Law of Trusts, Section 44, subsection (1), we find the following statement:

"§44. EFFECT OF FAILURE OF ORAL TRUST FOR THE SETTLOR.

"(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if (a) the transfer was procured by fraud, duress, undue influence or mistake, or (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or (c) the transfer was made as security for an indebtedness of the transferor."

Dorothy utterly failed to prove any of the conditions essential to the establishment of a constructive trust under which Henry could be held to hold title to the property involved as trustee for her use and benefit. Such being the case she is not entitled to a partition.

The judgment is reversed and the cause remanded with directions to dismiss the action.

MR. CHIEF JUSTICE KNAUSS not participating.