Marguerite **IRWIN** et al., Plaintiffs-Appellees,

v.

**WEST END DEVELOPMENT COMPANY**, a Colorado corporation, et al., Defendants-Appellants.

Nos. 72–1755, 72–1825.

United States Court of Appeals, Tenth Circuit.

June 29, 1973.

As Amended in Denial of Rehearing Aug. 17, 1973.

William J. Carney, Aspen, Colo. (J. D. Muller, Aspen, Colo., on the brief), for plaintiffs-appellees.

Frederic K. Conover, II, Denver, Colo., for defendants-appellants.

Before PICKETT, McWILLIAMS, and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Roy Vroom appeals from the District Court's judgment, 342 F.Supp. 687, impressing a constructive trust in favor of the appellees on 30.76 shares of West End Development Company stock sold to him by the Taylors, together with the Order directing him to pay West End Development Company $15,048.75 of salry and $3,128.24 of interest which he was held to have wrongfully received.

Vroom also appeals from the $5,000 attorneys' fees awarded appellees' counsel.

The appellees are four registered nurses who served in the U.S. Army Nurses' Corps and/or the Veterans' Administration. They were transferred every year or two to stations around the world. Some of them were stationed in Colorado at various times.

In 1957 Marguerite Irwin and Ada Rock, who is not a party to this suit inasmuch as she is now a resident of Colorado and has a similar suit pending in State court against Vroom, went to Aspen, Colorado, to inquire about purchasing a small lodge to operate after their retirement. They visited Vroom Realty. Roy Vroom interested them in joining in the purchase of 30 acres of undeveloped land just outside of Aspen for $45,000. One-half of the $18,000 down payment was tendered by Rock, Irwin and Lease, and the other half by Vroom Realty and Theodore Gordon. Lease, Irwin and Rock then held 20% interest, Vroom Realty, 40% and Gordon, 40%. Vroom Realty and Gordon sold 5% of their interests to Julia Crowley and Lois McCaleb, also registered nurses serving as the other appellees.

A syndicate agreement was entered into in late 1957.[1] It was prepared by Vroom's attorneys, mailed to the nurses and executed by them. In 1963 the syndicate was abandoned and a Colorado corporation known as the West End Development Company was organized by Vroom at the suggestion of his attorneys in Aspen. The nurses consented to the incorporation; however, they were not sent copies of the Articles of Incorporation and, in fact, they did not see them until shortly before trial. Upon incorporation Vroom served as President, Treasurer and Chairman of the Board. Until 1968, the other two directors were Mr. Petre and Mr. Zimmerman, Vroom's attorneys. They also served as secretary and vice-president, respectively. After that time the Board consisted of Vroom and two of his employees. Prior to the closing of the purchase of the property, Vroom assigned 10% of his investment in the syndicate to Mr. and Mrs. Taylor for $10,000 for a loan the Taylors had made to him. He did not inform the other syndicate interest holders of this transaction. In 1958 the syndicate interests and investments were as follows:

| | Total Interest in Syndicate | Initial Cash Investment |
|---|---|---|
| Five Nurses | 30% | $ 16,500 |
| Gordon | 35% | 750 |
| Taylors | 10% | 10,000 |
| Vroom | 25% | 9,250 |

After incorporation, the stock was owned as follows:

| | |
|---|---|
| Roy Vroom | 23.08 shares |
| Ann Taylor | 15.38 shares |
| Ewing Taylor | 15.38 shares |
| Marguerite Irwin | 10.253 shares |
| June Lease | 10.253 shares |
| Ada Rock | 10.253 shares |
| Julia Crowley | 7.69 shares |
| Lois McCaleb | 7.69 shares |

In 1961, Gordon, as a result of a partition, received ten acres of the land for his 35% interest in the syndicate.

In September, 1965, the Taylors sold their 30.76 shares to Vroom at $1,025 per share. That same year Vroom offered to buy the five nurses' stock for $600 per share. In 1966 and 1969 Vroom mailed the nurses financial statements reflecting his purchase of the Taylors' stock.

The land appreciated in value due to the development of the Buttermilk Ski Area nearby. Vroom continually requested the nurses to sell their stock at prices substantially lower than their

---

1. The Agreement to Form a Syndicate contained the following language in Article X:

No party may sell or assign his interest herein or any fractional portion thereof without first offering his interest or fractional portion to the other parties, in writing, and allowing them, or any one of them, 15 days to meet his price, in cash, the name of the proposed purchaser being disclosed. No party shall thereafter sell his interest or any fractional portion thereof to anyone at less than the above offered price. Otherwise the intersts or any fractional portion thereof shall be freely assignable.

known value; he did not disclose to the nurses the price he paid for the Taylors' stock; he did not state to them that he was personally interested in buying their shares; and he failed to disclose to them the price surrounding land was selling for. In 1968 a site across the street from the subject land sold for $15,000 per acre. At that valuation, attributable to the West End Development Company acreage, each share of stock would have been worth $3,000. That year Vroom stated in a letter to the nurses that they could sell their stock for $800 per share. It is conceded that Vroom is knowledgeable and experienced in land values, land development and land planning.

Vroom's alleged efforts to sell the land did not materialize. He decided to build a Swim and Racket Club in 1969. Although the shareholders did not consent to the construction of the tennis courts, Vroom proceeded with the construction based upon the approval of the project by the Board of Directors consisting of Vroom and two of his employees. The Board of Directors voted to accept Vroom's loan to the corporation of $39,216.91 with interest at the rate of 9% to construct the courts. Vroom wrote to the nurses about the construction plans. Miss Rock and Miss Irwin went to Aspen to consult with a lawyer. Vroom suggested that they contact the corporation's lawyer, Mr. Helmick. They did so and thereafter executed their powers of attorney relating to their stock to Mr. Helmick.

Also in 1969 Vroom and Powers, Secretary of the Board of Directors, authorized the corporation to borrow $75,000 from the Bank of Aspen to repay Vroom his loan plus interest and to pay a retroactive salary to Vroom of $15,000. Certain of the corporate property was mortgaged to secure the loan. At no time did Vroom inform the shareholders of the salary he had received from the corporation, of the Bank of Aspen's loan to the corporation, or of the interest paid to him. In 1969 the financial statement simply disclosed Vroom's loan to the corporation. The tennis courts lost money in 1970 and 1971.

Vroom contends that: (1) it was error for the trial court to impose a constructive trust on the 30.76 shares which he acquired from the Taylors because Article IV, Paragraph 6 of the Articles of Incorporation is not enforceable; (2) the provisions of Section 15 of the Uniform Stock Transfer Act barred the trial court's impression of a constructive trust; (3) the imposition of a constructive trust is barred by the statute of limitations and the doctrine of laches; (4) the trial court's application of estoppel was in error; (5) the constructive trust has been released by the expiration of 30 days from the date the judgment became final; (6) the trial court erred in granting judgment against Vroom for salary and interest paid to him; and (7) the trial court's award of attorneys' fees was in error.

## I.

Vroom contends that the Court erred in impressing a constructive trust on his stock purchased from the Taylors because Article IV, Paragraph 6 of the Articles of Incorporation is not enforceable. It states:

> No shareholder shall sell or transfer any outstanding shares of the capital stock issued by the corporation to such shareholder, excepting to the other shareholders, in the proportion which the number of shares owned by each bears to the total shares outstanding, without the prior consent of the owners or at least two-thirds (⅔) of the shares entitled to vote at the shareholders' meeting . . .

Vroom alleges that the provision is unintelligible, unworkable, and too uncertain in its terms to be enforced or to give the appellees their pro-rata rights to the purchase of stock sold to Vroom by the Taylors. Substantially the same proviso was incorporated in the Syndicate Agreement. Vroom argues that it is also an unreasonable restraint on the alienation of the corporation stock.

■■ The appellees did not seek to have the Articles of Incorporation specifically enforced, but rather to effectuate the intent of the Articles as a matter of equity in order to prevent fraud. The trial court did not enforce the Articles of Incorporation, but rather the fiduciary duty which the Court found Vroom owed the nurses. The law prohibits an absolute restriction against transferability, but if a restriction does not amount to an effective prohibition against transferability, then the test is reasonableness. Thus, a "first refusal" provision is valid in Colorado. Sterling Loan & Investment Co. v. Litel, 75 Colo. 34, 223 P. 753 (1924). The trial court recognized that the provision contained ambiguities but it construed them against the drafter and gave the provision a reasonable meaning according to Vroom's intent that the Articles should provide a workable and equitable result. The trial court stated that instead of stating "in proportion which the number of shares owned by each bears to the total shares outstanding", the draftsman meant to state, "in the proportion which the number of shares owned by each bears to the total shares not offered for sale." Vroom was, or should have been, well aware of the provisions contained in the Articles of Incorporation. He should have offered the Taylors' stock to the nurses on a pro-rata basis before purchasing it entirely for himself. The nurses were not aware of their right to purchase the Taylor stock until they saw the Articles in 1970. They relied on Vroom's judgment, honesty and fair dealing. Vroom owed a fiduciary duty to them. He breached this duty in not offering them their proportion of the Taylor stock. A constructive trust was imposed by the trial court because Vroom would be unjustly enriched by being permitted to keep the 30.76 shares. The trust arose because of unconscionable conduct by Vroom in obtaining the shares from the Taylors for his sole benefit. McConnell v. Dixon, 68 Wyo. 301, 233 P.2d 877 (1951).

II.

Vroom contends that the provisions of Section 15 of the Uniform Stock Transfer Act barred the trial court's impression of a constructive trust upon the Taylor stock. It states:

There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any bylaw of such corporation, or otherwise, unless the right of the corporation to such a lien or the restriction is stated upon the certificate. 1963 C.R.S. 31–11–14.

Vroom alleges that the effect of the statute is to render ineffective the restrictive provisions of Article IV, Paragraph 6 of the Articles of Incorporation because the restrictions were not set forth upon the stock certificates sold by Taylors to Vroom.

■■ Section 15 of the Uniform Stock Transfer Act was superseded by 1963 C.R.S. 155–8–204 which states:

Unless noted conspicuously on the security, a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it.

The purpose of Section 31–11–14 was to make ineffective restrictions on transfers to persons without notice. Sankin v. 5410 Connecticut Avenue Corporation, 281 F.Supp. 524 (D.D.C.1968), aff'd, 133 U.S.App.D.C. 361, 410 F.2d 1060 (1969), cert. denied 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970). The failure to note the restriction on the certificates is no bar to its enforcement against Vroom who had actual notice of it. The trial court went further and stated that in any event, Vroom is estopped from setting up the absence of the restriction from the face of the stock certificate as a defense, inasmuch as he owed a fiduciary duty to the other stockholders. Vroom breached his contractual and fiduciary duties to the appellees when he

purchased the Taylor stock without honoring the agreement he had previously made to permit the other stockholders to share in the purchase. The only equitable solution is the one the trial court arrived at, i. e., the imposition of a constructive trust on the 30.76 shares of stock purchased by Vroom from the Taylors. In this regard, we note that Vroom will share on a pro-rata basis, notwithstanding his breach.

### III.

Vroom alleges that the statute of limitations and the doctrine of laches bar this action. All parties agree that 1963 C.R.S. 87–1–15 applies, which is a five-year limitation on bills of relief. Vroom alleges that since the Taylor sale of stock occurred no later than September 15, 1965, the five-year limitation expired on September 15, 1970, some five months before the suit was filed. Vroom further alleges that even if the appellees are not barred by the statute of limitations, they are barred by the doctrine of laches, because they took no interest in the project for five years while Vroom was devoting substantial time to the development of the property.

 The actual sale of the Taylor stock to Vroom was concealed from the stockholders until Vroom sent the 1965 financial statement on March 7, 1966, within the five-year statute of limitations. Even so, when the nurses learned of the sale of Taylors' stock to Vroom they had no reason to object because they were unaware of the restriction on its sale. They had no knowledge of the restriction until they received copies of the Articles of Incorporation in 1970. Thus the statute of limitations could not begin to run until the appellees knew in 1970 of the trust which Vroom violated. Cliff v. Cliff, 23 Colo.App. 183, 128 P. 860 (1912). There is no distinction between resulting trusts and constructive trusts as far as laches and the statute of limitations is concerned. Vandewiele v. Vandewiele, 110 Colo. 556, 136 P.2d 523 (1943). Laches is not a valid defense. The nurses brought the action soon after learning of Vroom's breach of trust. The elements of laches are full knowledge of the facts, unreasonable delay in asserting an available remedy, and intervening reliance by and prejudice to another. Herald Company v. Seawell, 472 F.2d 1081 (10th Cir. 1972). The elements are not present here.

### IV.

Vroom next asserts that the trial court's attempts to avoid the effects of the statute of limitations and the Uniform Stock Transfer Act by invoking the doctrine of estoppel was in error. Vroom contends that since the issue of estoppel was not raised in the pleadings or the pretrial order, and must be pleaded specially, the Court could not rule or rely thereon.

 Estoppel arises here not as an affirmative defense, but as a reply to an affirmative defense. It need not be pleaded specially. The trial court is obligated to determine the issues presented by the evidence properly before it. Issues will be treated as if they had been raised by the pleadings when they are tried by the implied consent of the parties. Knudson v. Boren, 261 F.2d 15 (10th Cir. 1958). Since Vroom introduced the evidence forming the basis for the estoppel, he cannot now complain.

### V.

Vroom alleges that the constructive trust has been terminated by the expiration of 30 days from the date the judgment became final because appellees did not tender payment of their pro-rata share of the Taylor stock as required by the judgment. Vroom contends that the judgment became final ten days after the entry of the trial court's judgment.

 The general rule is that an appeal suspends the time allowed by the judgment for the performance of a condition affecting the substantive rights of the parties, so the party who is to perform the condition has the specified time starting from the time that the appellate court judgment becomes effective to perform the condition. 4 Am.Jur.2d, Ap-

peal & Error § 363. This court recognized the rule in First National Bank in Dodge City v. Johnson County National Bank and Trust Company, 331 F.2d 325 (10th Cir. 1964), where we said that a final and appealable order is one which terminates the litigation between the parties on the merits of the case and on affirmance the trial court will have nothing to do but execute the judgment it originally entered. See Weingartner v. Union Oil Company of California, 431 F.2d 26 (9th Cir. 1970), cert. denied 400 U.S. 1000, 91 S.Ct. 459, 27 L.Ed.2d 451 (1970); Rule 62(a), Fed.R.Civ.P., 28 U.S.C.A.; 28 U.S.C.A. §§ 1291–1294. Thus the appeal suspended the time for performance by the nurses of tendering payment for the shares of stock available to them through the imposition of the constructive trust on the Taylor stock. They must tender payment only after the judgment from this court becomes effective.

## VI.

Vroom next contends that the trial court erred in granting judgment against him for salary and loan interest paid to him. Vroom alleges that his salary and the interest paid to him are authorized under the "business judgment" rule and were also permitted under the provisions of Article VIII, Paragraph 1 of the Articles of Incorporation.

■■■■■ The Articles of Incorporation do not authorize salaries to be paid to the directors or officers. Vroom's salary was paid by a loan from the Bank of Aspen at a time when the corporation had no operating funds. The directors, in fixing their salaries, must consider the financial condition of the corporation. Glenmore Distilleries Company v. Seideman, 267 F.Supp. 915 (E.D.N.Y. 1967). Retroactive salaries are voidable where no extraordinary services are per-

formed. Vroom's compensation was already set at $14 per regular meeting, $25 per special meeting; no further compensation was authorized without shareholder approval. His salary was approved by a resolution signed by himself and his secretary who was on the Board of Directors. Since Vroom's presence and vote were necessary to provide a quorum of directors, the transaction is voidable; he cannot vote for his own salary. Steele v. Gold Fissure Gold Mining Co., 42 Colo. 529, 95 P. 349 (1908). Vroom's loan to the corporation and the interest he received, together with the retroactive salary, constituted a breach of his fiduciary duty; he could not profit at the expense of other stockholders. Wilshire Oil Company of Texas v. Riffe, 381 F.2d 646 (10th Cir. 1967), cert. denied 389 U.S. 822, 88 S.Ct. 50, 19 L.Ed.2d 75 (1967). He had assured the shareholders that the tennis courts would cost nothing to the corporation. Such, of course, was not the case.

## VII.

■■■ Vroom argues that the trial court's award of attorneys' fees of $5,000 by West End Development Company to appellees' counsel was in error because the appellees had not requested attorneys' fees and because there was no evidence presented as to the incurring or reasonableness of the fees. Attorneys' fees may be granted only if evidence is introduced establishing the value of the services performed. Del Rey Air v. Expressway Airpark, Inc., 468 F.2d 187 (10th Cir. 1972). No evidence was introduced regarding the value of the attorneys' services. Accordingly, the award must be set aside.

The judgment awarding attorneys' fees is reversed; the judgment is otherwise affirmed.