**TMF TOOL COMPANY, INCORPORAT-ED and Anton Kastory, Plaintiffs–Appellants,**

v.

**Robert C. SIEBENGARTNER and R.C. Siebengartner Incorporated, Defendants–Appellees.**

No. 89–1216.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1989.

Decided March 29, 1990.

Jack Joseph, Michael P. Meyers, Joseph & Myers, Chicago, Ill., for plaintiffs-appellants.

Reuben A. Bernick, Rudnick & Wolfe, Chicago, Ill., for defendants-appellees.

Robert C. Siebengartner, Essex, Conn., pro se.

Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

This is a diversity suit in which TMF Tool, Inc., and its founder, Anton Kastory, are suing Robert C. Siebengartner and an investment vehicle bearing his name for fraudulent misrepresentation and breach of fiduciary duty in connection with a complicated series of loan and stock purchase transactions between the parties. The defendants are countersuing on the grounds that the plaintiffs wrongfully refused to reimburse Siebengartner for expenses he incurred on behalf of the corporation, withheld his salary as treasurer of TMF Tool Co. ("TMF") and wrongfully terminated him. The district court decided the case after reviewing the parties' written stipulations of fact and documentary exhibits. The court awarded plaintiff TMF judgment in the amount of approximately $40,500 plus interest: $8,500 as consideration for stock sold or delivered to defendant Siebengartner and approximately $32,000 plus interest as compensation for funds converted by Siebengartner while he was treasurer of TMF. The district court ruled in favor of the defendants on the remaining counts of plaintiffs' complaint and ruled against the defendants on their counterclaims. We affirm in part and reverse in part and also affirm the district court's decision not to award punitive damages or attorneys' fees to the plaintiffs.

I.

TMF is an Illinois corporation with its principal place of business in Illinois. Plaintiff Anton Kastory founded TMF and is now a minority shareholder, officer and director of the company. Defendant R.C. Siebengartner, Inc. ("RCS") is a bankrupt California corporation with its principal place of business in San Francisco, California. Defendant Robert C. Siebengartner is also a California citizen. Federal jurisdiction is premised on diversity of citizenship. The agreement between the parties provides that Illinois law governs this controversy. Finding of Fact No. 15, citing to Pl.Ex. 1.

In January of 1986, TMF was in a great deal of financial trouble, owing over $2,000,000 to a local bank. This indebtedness was collateralized by 100 per cent of TMF's assets and by substantially all of founder Kastory's personal assets as well. Kastory began seeking investors in order to relieve some of the cash flow pressures on his company and soon hooked up with Siebengartner, and the two began to negotiate. In February of 1986, Siebengartner, purportedly acting on behalf of an investment company, RCS, which bore his name (but of which he was only a minority shareholder), and Kastory executed a stock purchase agreement. Under the agreement RCS agreed to loan $500,000 to TMF and Kastory agreed to sell majority ownership of his company to persons designated by RCS.

According to the terms of the original agreement, RCS was to advance $50,000 to TMF upon execution of the document and $450,000 at closing. The district court inferred that no payments were ever made under this agreement. Apparently, Siebengartner had been unable to come up with the money necessary to fund his loan obligations.

On June 23, 1986, the parties modified their original agreement. Under this revised stock purchase agreement, Kastory agreed to sell 850 of his TMF shares to Siebengartner and two Swedish investors, Josephson and Moller, with whom Siebengartner was connected. (The two Swedes

were helping Siebengartner fund the revised agreement.) 432 shares of TMF were to be sold to Siebengartner for $4,320; 209 shares were to be sold to Josephson for $2,090; and 209 shares were to be sold to Moller (on behalf of his English corporation) for $2,090. The total purchase price of $8,500 was to be deposited by the buyers with an escrow agent.

The revised stock purchase agreement also called for Siebengartner, Josephson and Moller to loan TMF $350,000; to make immediate payment of $75,000 (the receipt of which was acknowledged in the revised agreement); and to pay $275,000 by cashier's check at closing. Promissory notes for $100,000 to Siebengartner, $125,000 to Josephson and $125,000 to Moller were to be signed and deposited with an escrow agent. The revised agreement set closing at July 1, 1986. Siebengartner also became treasurer of TMF upon the signing of this agreement.

Kastory transferred the TMF stock and executed the promissory notes called for by the revised agreement, forwarding everything to Siebengartner. This turned out to be a grave mistake since Siebengartner never paid for his shares of stock in TMF and never forwarded to Kastory the stock proceeds advanced to him by Josephson and Moller, as required. Siebengartner did, however, forward the stock certificates to Josephson and Moller. Findings of Fact Nos. 29–32. Instead of honoring the agreement, Siebengartner commingled the TMF stock purchase payments with his own funds, and dribbled loan money advanced by the Swedish investors to TMF over a period of six months (in breach of the agreed schedule). In addition, while Siebengartner was treasurer of the corporation, he converted $32,334.84 of TMF's assets meant for Ulbrich, a TMF supplier and creditor.

Plaintiffs filed suit for damages caused by Siebengartner's faithlessness. The parties stipulated to the facts and submitted documentary exhibits. The district court found that Siebengartner had not defrauded the plaintiffs but had converted funds meant for Ulbrich to his own use and had failed to pay for the TMF stock he received. The district court also held that the plaintiffs could not rescind the revised stock purchase agreement because their acceptance of late loan payments from Siebengartner constituted a waiver. The court also ruled against the defendants on their counterclaims. We affirm in part and reverse in part.

## II.

### A. Rescission of the Stock Purchase Agreement

■ In Count II of the complaint, plaintiffs ask to have the stock purchase agreement rescinded as against Siebengartner and RCS because payment for the TMF shares was never forwarded to plaintiff Kastory. The district court held that TMF could not have the stock purchase agreement rescinded because there had been no fraud. While it may be true that TMF was not defrauded, by the same token TMF never received any money for the sale of its stock. This amounts to a total failure of consideration—a situation which justifies rescission of the agreement as between TMF and Siebengartner. *Finke v. Woodard*, 122 Ill.App.3d 911, 78 Ill.Dec. 297, 462 N.E.2d 13 (1984), *citing* A. Corbin, *Contracts* § 946, at 925 (1952); *Therm–O–Proof Insulation Mfg. v. Hoffman*, 329 Ill.App. 645, 69 N.E.2d 725 (1946).[1]

■ Plaintiffs cannot, however, have the stock purchase agreement rescinded as to the Swedish investors, Josephson and Moller, because, as plaintiffs acknowledge, the Swedish investors "parted with their mon-

---

1. Siebengartner argues that TMF cannot have the stock purchase agreement rescinded because TMF has not offered to return the benefits it received under the agreement, a normal prerequisite to rescission. This argument is specious because neither TMF nor Kastory ever received anything from Siebengartner in exchange for the shares Kastory parted with. Returning Siebengartner's shares to Kastory will simply put the parties back into their original positions. Hence, Siebengartner asserts no valid defense to a claim of rescission with respect to his shares in TMF.

ey in good faith to Siebengartner, the fiduciary to whom the certificates were entrusted." Appellant's Brief at 24–25. *See also* 3 Am.Jur.2d, *Agency* § 300, at 803–04 (1986). Since Siebengartner, as an officer of TMF and as TMF's asserted go-between, was an agent of TMF, TMF—and not Josephson and Moller—must suffer the consequences of Siebengartner's malfeasance. Moreover, neither of the Swedish investors is a party to this suit.

■ TMF also apparently asks us to equitably rescind the loan portions of the revised stock purchase agreement. This we will not do. TMF waived the right to *rescind* the agreement when it accepted late loan payments from Siebengartner and when it elected to continue accepting performance under the revised agreement (*i.e.*, by allowing Siebengartner to stay on as TMF's treasurer).[2] TMF's inability to rescind the transaction, however, does not necessarily mean that it has forfeited or waived a claim for damages for the delay caused by Siebengartner's conversion and breaches of fiduciary duty.

### B. TMF's Claims for Fraud and Breach of Fiduciary Duty [3]

■ TMF is also seeking damages on account of Siebengartner's alleged breaches of fiduciary duty, fraud and malicious conduct. The district court found that Siebengartner had not defrauded the plaintiffs because the stipulated facts did not support inferences that there were fraudulent mis-

representations, omissions, reliance or damages, as required for a fraud claim. Conclusions of Law Nos. 4–6. We agree with the district court.[4]

■ Ordinarily, stipulations of fact will obviate the need for appellate review of factual findings. We will, however, review findings *derived from* stipulated facts for clear error. *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir.1989), *citing in part, EEOC v. Maricopa County Community College Dist.*, 736 F.2d 510, 513 (9th Cir. 1984). Hence, the clearly erroneous standard applies to determinations with respect to fraud. *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1544 (11th Cir. 1984).

■ The elements of fraud in Illinois are quite straightforward. They are:

(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.

*Soules v. General Motors Corp.*, 79 Ill.2d 282, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980) (citations omitted). As the district court correctly noted, there is no proof that defendant Siebengartner ever made any false statements of material fact in connection with either the revised stock purchase transaction or the original stock purchase agreement. Siebengartner did

---

**2.** Because we hold that TMF cannot rescind the revised stock purchase agreement, we need not address the defendants' contention that TMF cannot have the agreement rescinded unless it returns or offers to return any benefits received under it.

**3.** In June 1988, the district court entered a memorandum opinion dismissing Count IV of the plaintiffs' complaint, which alleged that Kastory had suffered damages to his credit and reputation on account of the defendants' actions. Since Kastory has apparently chosen not to appeal the dismissal of this count, judgment on this count stands. *Sere v. Bd. of Trustees of the University of Illinois*, 852 F.2d 285, 290 (7th Cir.1988); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). The same fate awaits defendants' counterclaims.

**4.** We pause to note that the Illinois standard of proof in fraud cases is "clear and convincing." *Kinsey v. Scott*, 124 Ill.App.3d 329, 79 Ill.Dec. 584, 589, 463 N.E.2d 1359, 1364 (1984); *Gordon v. Dolin*, 105 Ill.App.3d 319, 61 Ill.Dec. 188, 192, 434 N.E.2d 341, 345 (1982). The standard is high because of the fear that claims of fraud can be manufactured easily. *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1303 (7th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). The district court used the lower preponderance of the evidence criterion in assessing plaintiff TMF's claims of fraud. Since, however, the district court found that the plaintiff's claims failed even under this lower standard, the use of the lower standard did not amount to error.

not even promise to use his own assets in funding the loan to TMF.

Similarly, there is no evidence that Siebengartner concealed any material information not already known by TMF. Upon signing the revised agreement, TMF knew that Siebengartner would need help coming up with his part of the loan money since he had been unable to get financing for the original stock purchase agreement. Since TMF signed the agreement with this understanding, TMF cannot claim that Siebengartner concealed or misrepresented his financial condition.

In this connection, we do not believe that Siebengartner actually lied to, or concealed information from, TMF. There was no false information upon which TMF could have relied or which could have induced TMF to act. There was simply a failure to perform. As noted, in assessing a fraud claim, we are bound by the factual determinations of the district court unless its findings of fact are clearly erroneous. *Monarch Beverage Co. v. Tyfield Importers, Inc.,* 823 F.2d 1187, 1190 (7th Cir.1987). Because we agree with the district court's interpretation of the stipulated facts, which is certainly not clearly erroneous, TMF's claim for fraud must fail.[5]

TMF's claim for breach of fiduciary duty is, however, much stronger than its fraud claim. The district court found that Siebengartner was a fiduciary of TMF at the time the revised stock purchase agreement was signed and at the time Siebengartner was responsible for forwarding funds to TMF's supplier, Ulbrich. (Besides owning stock in TMF, Siebengartner had become treasurer of the corporation under the terms of the revised agreement.) *See* Findings of Fact Nos. 32 & 41.

■ Siebengartner breached his fiduciary duty to TMF by not forwarding, in a

timely fashion, the loan money given to him by Josephson and Moller. Siebengartner also breached this duty by commingling these funds with his own money in order to pay his personal debts. He also violated a fiduciary obligation to a cash-strapped corporation by not explaining to the corporation the reasons for the delay in advancing the loan's proceeds. Moreover, the conversion of over $32,000 in corporate funds intended *for* TMF's supplier, Ulbrich, presents a classic example of a fiduciary breach by a corporate officer.

■ The district court held that TMF had "waived its objections to Siebengartner's delayed performance under the revised agreement by continuing to accept his loan advances on a delinquent basis." Finding of Law No. 8. We disagree. The defendants have cited no case in which a defense of waiver has been successfully interposed to an action for breach of fiduciary duty. Even assuming that this defense could be properly invoked against a fiduciary breach claim, the record does not sufficiently support a finding of waiver.

■ There is very little authority whether or when a corporation might be said to have waived a claim for breach of fiduciary duty. The best answer seems to be that, in the absence of equities justifying an estoppel, a corporation cannot waive such a claim merely by inaction. Rather, since any damages would belong to the corporation, the decision to waive such a claim must be made deliberately by the corporation; in other words, such a decision must eventually be *ratified* or expressly *affirmed* by the corporation. *See* Montgomery, *The Fiduciary Duties of General Partners,* 17 Colo.Law. 1959 (1988) ("Breaches of fiduciary duty clearly may be waived or ratified after the fact if the waiver or ratification is specific as to

---

**5.** Similarly, there is no evidence that Siebengartner fraudulently induced TMF to sign a postdated check for $175,000 and a promissory note for $350,000 over to H.M. Financiere, a company connected with Hans Muller, in exchange for Muller's advancing the balance of the loan proceeds due to TMF. Conclusions of Law Nos. 3 & 5. Rather, the record shows that Siebengartner played a very minor role in what transpired

between TMF and Muller. In fact, TMF has virtually admitted that Siebengartner was not responsible for Muller's actions here. *See* Parties' Stipulation of Facts Nos. 58–60, Appellant's Appendix at 20–22. We find no error in the district court's determination that Siebengartner did not fraudulently induce TMF to make these notes and checks payable to Muller's company.

the particular breach, is based upon full disclosure and is not obtained by fraud or coercion.") (citations omitted). *See also First National Company v. Commissioner of Internal Revenue*, 289 F.2d 861, 867 (6th Cir.1961) (implying waiver must be by specific act, not by omission).

"Waiver" commonly extends to the waiver of a known right or privilege. *See, e.g.,* 28 Am.Jur.2d, *Estoppel & Waiver,* § 154, at 836 (1966). Simply put, "a prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it." *Id.* at § 158. No such intention is manifest here.

The Swedish investors—who became substantial shareholders in TMF pursuant to the revised stock purchase agreement—apparently never knew that Siebengartner was using the money they had forwarded to fulfill their loan funding obligations to TMF. In addition, TMF was in a terrible cash bind. It had very little choice but to accede to Siebengartner's breaches if it were to have any hope of economic survival. (It has long been settled that a party to a contract that has been partly performed when malfeasance is discovered can, where suspension of the contract is impossible or impracticable, continue performance without waiving a claim for damages.) Thus, the equities support a recovery by TMF from Siebengartner, a faithless corporate fiduciary.

■ Because Siebengartner breached his fiduciary duty, TMF is entitled at least to a partial refund of Siebengartner's salary for the period when the breaches occurred. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.,* 90 Ill.App.3d 817, 46 Ill.Dec. 186, 201–202, 413 N.E.2d 1299, 1314–1315 (1980); *Irwin v. West End Development Co.,* 481 F.2d 34, 40 (10th Cir.1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 915, 39 L.Ed.2d 110 (1974); *Vendo Company v. Stoner,* 58 Ill.2d 289, 321 N.E.2d 1, 14 (1974), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1398, 43 L.Ed.2d 655 (1975). Accordingly, we remand to the dis-

trict court for a determination of the amount of damages attributable to Siebengartner's conversion of corporate assets intended for Ulbrich. Damages for the delay in forwarding funds to TMF are also payable. In addition, we remand for a determination of the amount of Siebengartner's salary refundable to TMF.

### C. Attorneys' Fees

■ Lastly, plaintiffs contend that the district court erroneously denied them attorneys' fees. The standard of review here is abuse of discretion. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981). And, in light of the normal rule that the parties must each bear their own attorneys' fees, oppression or bad faith must be shown to justify an award. *Pantry Queen Foods v. Lifschultz Fast Freight,* 809 F.2d 451 (7th Cir.1987). Given the facts of this case, we find that the district court did not abuse its discretion in denying attorneys' fees. Siebengartner's actions may have been wrongful, but they are not sufficiently egregious [6] to require a fees award.

### III. Conclusion

Although we affirm the denial of the fraud claim, we conclude that Siebengartner breached his fiduciary duty to TMF repeatedly and failed to forward stock purchase money to Kastory. Accordingly, the judgment of the district court on these claims is reversed and Siebengartner's shares in TMF are to be returned to Kastory. The case is remanded for a determination of damages (including interest) owed to TMF on account of Siebengartner's breaches of fiduciary duty in connection with his, apparently temporary, conversion of loan proceeds and his conversion of the TMF funds owed to Ulbrich. We also remand for a determination of the amount of Siebengartner's salary required to be refunded to TMF. The $100,000 promissory note payable to Siebengartner should be returned to him since TMF eventually received these funds and since damages for

6. For the same reasons, we affirm the district court's decision not to award punitive damages

to plaintiffs.

Siebengartner's breach of fiduciary duty will encompass any damages attributable to delay in payment. The decision of the district court is, therefore,

AFFIRMED in part and REVERSED and REMANDED in part.